As this court is aware, rulings of class certification are entitled to deference and are reviewed by an abuse of discretion standard. However, if the court below erred with respect to the trial, those errors are reviewed de novo. We submit to your honors that the decision of the court below was fraught with multiple legal errors, any one of which would have warranted reversal. First, the trial court committed multiple legal errors, reaching legal conclusions directly contrary to multiple holdings of this court. It found no commonality directly contrary to the precedent of Slade, binding precedent of this court. It found that individual damages precluded certification contrary to Deepwater Horizon and this court's recent decision in Vine v. LPS Financial. It found that the fact that a class includes individuals who may not be able to prove injury precluded certification and precluded a finding of commonality. Both of those decisions are directly contrary to the holdings of this court, notably Deepwater Horizon and MIMS. It found that the need to change objective information from individual files in order to determine damages precluded certification, again contrary to the ruling of this court. We appoint this court to your honors to the State Farm. I apologize, I get State Farm and Allstate confused, so I had to check and see which one that was. The court also erred in finding that Louisiana law requires proof of an underpayment in order to find violation of LA-22-1892-B-5 in a breach of the contract. All of those are legal errors. Any one of those errors taken alone would be sufficient to warrant reversal. Taken together, they demonstrate that the ruling of the trial court is irretrievably flawed and must be sent back for further review. The ruling on commonality is deeply erred. The case is so like Slade, which the court opted to distinguish. The case was so like Slade that the parties agreed to stay all the proceedings pending this court's ruling in Slade. Nevertheless, the court opted not to follow the binding precedent of Slade, and it did so based on some very specious distinctions. Distinctions that either are distinctions without a difference or are not distinctions. The same facts were present in Slade and were considered by this court in Slade and were found not to preclude certification of a practically identical claim. The reasons for distinguishing the claim from Slade that the trial court gave were that with respect to the NADA button, there's not a button that Geico can press that would give an NADA value, whereas in Slade there was a quote NADA button. Well, your honors, that is a distinction without a difference. Present in every one of these cases, available for every one of these cases in the CCC files is an NADA value. An NADA value that CCC recognizes is an actual and legitimate NADA value. Anytime an NADA value is available, it's there. That's a distinction without a difference. There's no distinction on that ground. I thought the bigger basis for the district court ruling was the 20 to 50 percent, the view that 20 to 50 percent of potential plaintiffs actually got more under CCC than they would have under NADA. Well, that same issue attained in Slade, and that was in fact a point of contention throughout the Slade litigation was the fact that not everyone received less than NADA in Slade, and that was found in Slade not to present any bar to certification. In fact, your honors, Slade has since been settled and awards are being distributed to the class based on their NADA valuations. A special master went out and got the NADA valuations and distributed the NADA valuations based on, according to the strengths of each individual claim, based on the difference between NADA and CCC. And there were individuals who had no injury under, or no damages under plaintiff's damage theme. That does not mean that those individuals were uninjured. It does not mean that they couldn't be members of the class. So how did they get part of the recovery? How was that? Because they would have a claim, and I'll get into that a little bit further in my remarks, your honor, but they would have a claim under, for breach of bad faith and breach of contract. And because they theoretically had a claim, they got a de minimis payment out of the class funds, but they did not get anything based on the difference between. What's de minimis? I think it was $50 a head. You keep going on Slade, and you said the same issue was in Slade. I mean, it's a little difficult because our court's opinion in Slade doesn't get into that factor, but why couldn't it be that, given the abuse of discretion standard, Slade was right, but so was this case was also right. If it's the district court, if it's a close call on whether some of these individual issues predominate over common issues, why isn't that just a situation where the district court gets to make those close calls? Because, your honor, the bases for distinguishing Slade are not valid bases. They are factually inaccurate. They are not issues that weren't considered in Slade. And even setting aside Slade, the trial court below committed multiple errors. Your view is once there's a class cert that comes up to us and we say no abuse of discretion affirmed, you're saying every class like that has to be certified? No, your honor, but I do think that the court has to consider that law, and particularly when the court has said, as in this case, that the cases were so identical that the court was going to wait until Slade had been decided to even issue its ruling in this case, to even proceed in this case. I think in that case, you have to look at the binding precedent of this case, and it's not to say that every case will be exactly the same, but to disregard that precedent and instead follow a case from another circuit, a district court, the Curtis case, that didn't even involve the same kind of statute. That's reversible error, your honor, because you're setting the wrong legal standard and not following the precedent in this court and relying on specious distinctions. And I would submit that there may be distinctions between this case and Slade that the court could consider, but when the court decided not to consider Slade at all, when the court said no, this case is not Slade and distinguished Slade, that was reversible error, particularly when you look at the grounds for the distinction, which were, in truth, distinctions without a difference. Where is a judge reading Slade from our court going to see that there was also this issue with a significant percentage of the class not being hurt by the valuation method? Well, your honor, it was certainly in the briefs in Slade. It was certainly an issue that was raised and discussed ad nauseum in Slade. So the fact that the court didn't address it directly in its opinion does not mean that it wasn't there or that the lower court couldn't see that it was there. And certainly there were decisions subsequently in Slade. I think our opinions are precedential. I don't think the briefs that get filed are precedential. Just one more question on the standard of review. What's your best case where a district court denied class certification and we reverse saying that was an abuse of discretion? I would say it was Monumental Life. And in M. Ray Monumental Life, this court found that because the court below erred in multiple respects with respect to the standards applicable to class actions, it would send it back and have the court apply the correct standards. And your honor, Slade is not the only standard from which the court deviated. There are general principles that the Slade court relied on that the district court failed to follow. You don't even have to get to Slade to get to reversible error. If Slade didn't exist, there would still be reversible error. First of all, I would note that it's not just Slade that is held that when you have a computerized system for valuing total losses that is contrary to the law that specifically governs how you're going to adjust total losses, that that is a claim that's suitable for class certification. Multiple courts have so held, not just Slade, but South versus Progressive, Gautreaux versus State Farm in the Louisiana Third Circuit, JAMA versus State Farm in the Western District of Washington, Senior versus Safeco in the Southern District of Florida. I'm going to have a hard time pronouncing this one and I apologize to Mr. Nefarat versus State Farm, 339 FRD 154 also in the Western District of Washington. But again, setting aside all of that precedent that says that when you're dealing with a computer, an automated system that is used to adjust every single total loss claim and that automated system doesn't comply with specific requirements of state law, that is a claim that is suitable for class certification. Even if you set that aside, there are just fundamental principles of class certification law that the trial court misunderstood or failed to apply and fundamental principles of Louisiana law that the trial court misunderstood or failed to apply. The court below erred in finding that underpayment was necessary to prove liability. No Louisiana court has ever said that you have to have an underpayment to prove a violation of L.A.R.S. 22-1892-B-5 or 22-1973. In fact, what courts have said and this authority cited by defendants, the Pell versus Clark case and the Loke versus Allstate cases, what they have said is there must be a breach of contract in order to receive penalties under 1973. There must be a breach of the insuring contract. That's exactly what we have and we'll be able to show it with respect to every member of the class, Your Honors. There's a breach of the insuring contract because under Louisiana law, the terms of 22-1892, those specific requirements, are incorporated into the policy. So they breach the policy when they fail to follow those specific terms. The breach of contract is because they use the CCC that you say violates the statute. Correct, Your Honor. Whether or not CCC complies with the statute is going to rely entirely on common evidence. Louisiana law, I know Texas law, damages are an element of breach of contract. Is that an element of Louisiana breach of contract? No, damages are not an element, certainly under 1973. There's a case called Sultana by the Louisiana Supreme Court directly on point that said, in fact, if you required plaintiffs to prove damages every time there's a breach of the duty of good faith, you're breaking the statute. Forget this insurance contract. I sue someone for not paying me some money in a contract. I know Louisiana is a different animal. Common law, damages are usually an element of breach of contract. Your Honor, again, I don't know that there is a case in Louisiana that says the damages are not an element of a breach of contract. However, there are good faith statutes that say that damages is not an element of that, and a breach of contract is what gives rise to that element. So if you breach the terms, whether or not you have damages, if you breach the terms of the insuring contract, you are in breach. And there would be, in this case, we submit there are damages. You've been given an unlawful valuation, the wrong valuation. At the very least, you have an entitlement to a lawful valuation. Now, the only evidence in the record as to what that lawful valuation would cost comes from defendant's own experts who said that it costs $300 to get an appraisal. Well, under the terms of the policy, if you contest the value that's been awarded, you're entitled to ask for an appraisal, but you have to pay for it yourself. The insurer has to pay for it. So there's damages in having an unlawful valuation and just having to pay for another value. So there is damages. Last week, a southern district of Texas in a case against Geico, a class was certified. Are you familiar with that? Yes, Your Honor. On Jill or on Hill? Yes, Your Honor, I am. It had to do with tax and license fees. Okay. And I would submit that the It was also about total loss payment. Correct. It's tax and license is on total loss. My question is, Judge Ellison, well, the class was described. In describing the class, it was limited to people where the total loss payment was less. I mean, the question really is, couldn't you have defined the class here to be those people for whom the payment received was less than the NADA? Theoretically, And that eliminates a lot of the problems. It would eliminate a lot of the problems, and certainly this court could instruct the lower court that that's how it wants it to proceed. However, it is our position that there is a violation of the statute, whether the value is under the NADA or not, because NADA is not the sine qua non. NADA is simply how we reach damages, because we're saying you violated the contract. You breached the contract. You breached the statute. Now let's see how do we determine damages. Because CCC is invalid. Correct, because CCC is invalid. Well, let's look at a valid determination. Well, NADA is one valid determination, but there are other determinations under the statute that may also be valid. So you would be essentially under-inclusive if you limited the class to people who received less than NADA. Certainly the court could do that if the court feels that that would eliminate problems. The court can always, in Monumental Life also noted this, the court can always change the scope of the class definition. Your Honor, what constitutes a common issue is something that Your Honor dealt with in for everyone in the class. Everyone in the class had a CCC valuation. That was the preliminary valuation that started the negotiation for every class member. And it's not just a theoretical problem. Their experts showed that no matter which system you use, whether you use NADA, Edmonds, or KBB, CCC is lower than any of them. All right. Thank you, Counsel. You'll have five minutes. Thank you. All right, Mr. Goldfein. Before I get to my presentation, the 20 to 50 percent that the court recognized was controverted or compared to less than 1 percent by progressive in the record below. Progressive adjusters. You're saying in Slade when you say progressive? The record as to what progressive was that the judge, that the district court found that this case was distinguishable from Slade was Slade involved 1 percent or less discretion. Indeed, their adjusters had no discretion. The only piece of information that is referenced is one lawyer's comment unsupported by the record in one court filing as to progressive having discretion. Otherwise, there is no basis for concluding that progressive had discretion. It is undisputed in the record below that GEICO adjusters have discretion to pay more than CCC. Very recently, in cases like Chavez and Prentel, this court reminded district courts to conduct a rigorous analysis at class certification and re-instructed what that rigorous analysis entailed. The district court followed this court's instructions through robust proceedings in three different phases. First, before the evidentiary hearing, the parties fully briefed the factual and legal issues, including Slade and distinctions from Slade. Also, the underpayment issue, which is the central liability issue under Louisiana law, was fully briefed below. Like here, plaintiffs failed to identify a single Louisiana law or law of any other circuit that says underpayment is not an element of the breach element of causation under Louisiana law. I will also note that damages is an element of a breach of contract claim under Louisiana law. Also, like here, plaintiffs argued that the mere listing of common statutory questions without more is sufficient to prove commonality, despite the Supreme Court's directive in holding in Dukes to the contrary. And like here, plaintiffs argued Slade controls, Slade controls, without explaining that this court's holding in Slade, and indeed, the arguments that they start with, are conflating, to give them as much credit as possible, conflating holdings of the district court in Slade with holdings of this court in Slade. This court's holdings in Slade were narrow and do not impact the issues here. The district court conducted pre-hearing conferences to help it prepare for the hearing. It asked for and received stipulations from the parties, more than 100 exhibits, and dozens of lay and expert deposition designations two weeks in advance of the hearing. At the class hearing, itself, second, the district court permitted the plaintiffs to call any lay or expert witnesses and did not limit any questions for any of these witnesses, heard testimony from 11 lay and expert witnesses over three days. Third, after the hearing, the district court considered extensive post-trial briefing. And all of that work put the district court in the position to follow this court's instructions in issuing its decision. The district court made its own findings of fact, determined what elements plaintiffs would have to prove at trial, and addressed what a trial in this case would look like and what the party's contentions before a Louisiana jury would be. The court did not ignore plaintiffs' repeated arguments about Slade. That's a case that involved a different insurer, a different valuation service, different evidence was submitted to the district court, the parties made materially different tactical and legal arguments, and most importantly, as found by the district court, involved different adjuster practices. Unlike... The commonality ruling does seem questionable to me. I mean, isn't it a common issue, maybe the legal issue in the case, whether CCC violates, you know, this statute or whether it's a generally recognized used motor vehicle industry source? So, on two sides of that issue. The first side, Dukes addressed whether a statutory violation, the district court and the Ninth Circuit in Dukes held that commonality was met by the mere statutory violation that would determine the case. Dukes, Judge Justice Scalia's opinion in Dukes reversed that holding. I'll concede that there are courts out there that don't rigorously analyze the commonality standard, but the standard is whether or not there would be common proof leading to common answers apt to resolve the case. On that issue alone, I mean, we think underpayment is the main driver for the breach of contract claim and under Louisiana law, there's no bad faith claims without the breach of contract case in Pelley, but on that issue alone, whether CCC complies with the statute, each CCC report contains what is referred to commonly as Part D. That's a survey of vehicles, comparable vehicles. Whether those vehicles are comparable and sufficiently local, the record is undisputed that that would require a claim, a CCC report by CCC report review, and the jury in Louisiana would get to determine that under loan. So, even if you accept the sole argument that this is the statutory interpretation issue and that is still an individualized issue that must be addressed. It's not a general issue whether the CCC, I mean, I know it's different by each market, what it generates, but just whether the methodology is generally accepted, that's not a yes or no question across the board? Whether that could be a yes or no question by itself is only half the solution. Even if it's a no question, the survey that's in there by which they base their valuation could comply with the statute and you'd have to look at each survey. So, you'd have to look at, you know, in, I don't remember the number of cars, but I believe it was six and nine cars. You'd have to look at, they were sufficiently located, and there was evidence presented to the district court, and plaintiffs argued, for example, that as to Mr. Prudhomme's cars in the Part D, the comparables, they were too far away. And Keiko responded, well, that's something for the district court's reason to believe, that they weren't too far away, given that Mr. Prudhomme's car was a Keil Rondo, which there were only a few dozen sold in Louisiana during the period of time. But, you know, most importantly for the district court, it turned on at the beginning whether the Keiko authorized its adjusters the discretion to settle for more than the CCC valuation. If that's true, which the evidence is undisputed, and as the court has pointed out, it's 20 to 50% of the time, that means the CCC valuation can't be used systematically, and the evidence is undisputed that you'd have to do a claim by claim review to determine the settlement amount. That is what the judge found. The judge further found that this discretion meant that how each class member received the settlement required that review, and the plaintiffs concede that point in their reply brief at pages three to four. And as instructed by this circuit, the district court then applied these findings to Louisiana law, and the Rule 23 elements for which the plaintiffs had the burden of proof, and then made conclusions of law that failed, that plaintiffs failed to meet their burden to prove commonality, adequacy, and predominance. Plaintiffs challenged, and I just want to use the term that they had, the factually inaccurate distinctions that the district court made. The district court engaged in the hard work that this court had instructed it to do. It made findings of fact, and those findings of fact are reviewed for clear error. Plaintiffs do not argue that there's no evidence on the record supporting the findings of fact. It's nowhere in their briefs. Plaintiffs' briefs provide no basis that it was not supported by the evidence. They argue that their findings are wrong, just like they argued in the district court. But the district court was not persuaded. After doing the work, this court instructed it, weighing the controverting evidence, assessing the credibility of the witnesses. Plaintiffs do conclusionary challenge, and they did today, the district court's rigorous analysis that determined that both breach and causation were elements of plaintiff's claims, and both elements required proof of underpayment. The district court, a former Louisiana state court judge, longtime litigator in northern Louisiana, relied on this court's decision in Luke and two decisions of the Court of Appeals in Pelley and Bergeron. Notwithstanding appellant's argument to the contrary, Pelley made it clear that underpayment is the element of the breach of contract. If the amount has been paid, the GEICO's duty has been extinguished, and there can be no breach. These three cases are correct statements of Louisiana law. Plaintiffs cite no authority to the contrary. Not in their opening, not in their reply briefs, not in the filings and argument before the district court, not in their argument here. And the court should affirm the district court's work. I'm happy to address any further questions. I'm also happy to sit down. I will thank the Judge Costa, on behalf of my dad's memory, for his kind comments at the start. Thank you. All right. We have your argument. Counsel, Mr. Murray, you get five minutes for rebuttal. Thank you, Your Honor. First, I would note that opposing counsel conflated the issue of whether or not an amount different than CCC was paid with the issue of whether or not an amount less than NADA was paid. Counsel is correct that in a minority of cases, the amount that was ultimately paid differed from CCC, and that in Slade, that was only 1% of the cases that In other words, the amount that after the adjusters had talked to the insured and after they had given them the unlawful valuation, the insured came back and the adjusters said, Well, we'll give you a little more, and they paid a little more. Well, Your Honor, the testimony is widely varying on what that percentage is. One adjuster said it was 50. Another adjuster said it was 20%. But we can certainly determine if Your Honor says that somebody or Your Honor say that someone who gets less than or an amount greater than the CCC value isn't harmed, then you can certainly eliminate those people. You can certainly identify who they are, and you can do it simply by referencing the files. The Court said the fact that you have to look at every file precludes certification. Well, that's different. That's contrary to what this Court held in Mitchell. The fact that you have to look at every file doesn't preclude certification. The question is whether the objective data are in the file that allow you to make that determination. As this Court said in In Re U Monumental Life, if the objective data are there, there is no sweat of the brow exception. The fact that you have to go and pull every file and look at that number, if it's just a number and that's all it is, you can do that. It's an objective determination and the data are there. That's not unduly burdensome. That's not unmanageable. In fact, this Court has held that even if it takes 20 minutes to do that, that would be manageable. So the lower court's assumption that the need to look at an individual file just to obtain a single number, a fixed number, is legally erroneous. And that issue does differ from Slade, but it's an issue that's easily addressed, and if we just want to limit it to the cases where the number is exactly, the CCC number is exactly what the insured was paid, we can identify those claims, and it would still be a vast majority of the class. This concept that underpayment is necessary, they're relying on case law, much of which predates 1892. 1892 was enacted in 2010, Your Honor. 2010 is when these new specific requirements came about, and these specific requirements, if you just look at the language of the statute, they're not complying with it, and we're going to use common evidence to show that they're not complying with the statute. For instance, Section A, he said, we have to look at all the comparables that were reviewed to see whether or not they're complying with the statute. Our problem is not with the comparables that they've selected. Our problem is the fact that they're not doing a survey as required by the statute. They're taking a survey, they're taking some comparables, and then they're applying their own proprietary algorithms that don't appear anywhere and aren't based on data that come from that survey. They don't come from local dealers. They're based on their own proprietary algorithms, and whether or not they're allowed to do that and whether or not that complies with the statute, that's going to be common for the entire class. And if they don't fall within, that's in Section A. That's whether or not they comply with Section A. We say they don't. If they do, they win. If they can show that what they're doing is a survey, then they win. We think that the fact that they're applying these proprietary algorithms to adjust downwards the numbers that they get from that survey, that's not proper. That's not allowed under the statute. But whether or not that is is a common question. And then under Section B, if they don't fall within A, they've got to fall within Section B. Section B of 1892 says you have to be a generally recognized user motor vehicle industry source. They're not. CCC is an insurance industry source. And whether or not CCC is a used motor vehicle industry source or an insurance industry source, that is a question that's going to be common to the entire class. And the answer to that question is going to answer the question for everyone in the class. Have any state regulators raised problems with CCC? You know, it's interesting that you would ask that. I'm not talking just about Louisiana. Yes. In fact, Rhode Island said that looking at a statute very similar to Louisiana's said, no, CCC can't be used because CCC is not a used motor vehicle industry source. It's an insurance industry source. But Louisiana recently, the Louisiana Department of Insurance, the trade group that I think filed an amicus in this case, asked the Louisiana Department of Insurance to say, hey, look, doesn't this really comply with the statute and isn't what we're doing okay? You had this directive that you issued back in 1973, and now we have more sophisticated means of adjusting total loss. So why don't you take a look at these? And you know what the Department of Insurance said? It said look at 221892B5 to determine whether or not you're in compliance. It said that that has changed the standard, and that's now the standard that we're going to determine whether or not you're in compliance with Louisiana law. And that's the question that's going to be the same for everybody in the class. That's what Dukes requires. That's what Your Honor required in Crutchfield. It's a common question that if the answer is the same for everybody, it advances the ball dramatically in these cases, and that's exactly what happens here. If CCC does not comply with 221892B5, then we get to go on to damages, and the only issues that will be individual issues are damages. And as we've shown and as their own expert confirmed, those can be determined by reference to objective data and formulaic methods. But if they win, they win. Thank you, Your Honor. The case will be submitted. That's the last case for the day. We'll be in recess until tomorrow morning.